UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
JOSE MARIO PEREZ,

Plaintiff,

v.

BOARD OF MANAGERS OF THE MANHATTAN PLACE CONDOMINIUM, MANHATTAN PLACE PARKING, LLC AND IMAA CAFE CORP.,

Defendants.
-------------------------------------------------------------x

CV

COMPLAINT

JURY TRIAL REQUESTED

**COMPLAINT**

Plaintiff Jose Mario Perez (hereafter referred to as "Plaintiff"), by counsel, Hanski Partners LLC, as and for the Complaint in this action against Defendants Manhattan Place Parking, LLC and Imaa Cafe Corp. (together referred to as the "Retail Defendants") and the Board of Managers of the Manhattan Place Condominium (the "Board of Managers" and together with the Retail Defendants the "Defendants"), hereby alleges as follows:

**NATURE OF THE CLAIMS**

1. This lawsuit opposes pervasive, ongoing, and inexcusable disability discrimination by the Defendants.

2. In this action, Plaintiff seeks declaratory, injunctive, and equitable relief, as well as attorney's fees, costs, and expenses to redress Retail Defendants' unlawful disability discrimination against Plaintiff, in violation of Title III of the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 12181 *et seq.* and its implementing regulations.

3. In this action, Plaintiff also seeks declaratory, injunctive, and equitable relief, as well as monetary damages and attorney's fees, costs, and expenses to redress

Defendants' unlawful disability discrimination against Plaintiff, in violation of the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York State Executive Law ("Executive Law"), the New York State Civil Rights Law, § 40 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), Title 8 of the Administrative Code of the City of New York ("Administrative Code").

4. As explained more fully below, Retail Defendants own, lease, lease to, operate, and control a place of public accommodation that violates the above-mentioned laws. Retail Defendants are vicariously liable for the acts and omissions of their employees and agents for the conduct alleged herein.

5. As explained more fully below, the Board of Managers operates, manages, maintains, repairs, and controls the condominium's common elements, including the multiple pathways leading from the public sidewalk to the Qahwah Valley premises (the "Common Retail Pathways").

6. The Defendants made a financial decision to ignore the explicit legal requirements for making their place of public accommodation and the pathways leading to the place of public accommodation accessible to persons with disabilities. In so doing, Defendants made a calculated, but unlawful, decision that disabled customers are not worthy. The day has come for Defendants to accept responsibility.

7. This action seeks to right that wrong via recompensing Plaintiff and making Defendants' place of public accommodation fully accessible so that Plaintiff can finally enjoy the full and equal opportunity that Defendants provide to non-disabled customers.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 12188, and 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under the ADA.

9. This Court has supplemental jurisdiction over Plaintiff's related claims arising under the New York State and City laws pursuant to 28 U.S.C. § 1367(a).

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants' acts of discrimination alleged herein occurred in this district and Defendants' place of public accommodation that is the subject of this action is located in this district.

## PARTIES

11. At all times relevant to this action, Plaintiff Jose Mario Perez has been and remains currently a resident of the State and City of New York.

12. At all times relevant to this action, Plaintiff Jose Mario Perez has been and remains a wheelchair user. Plaintiff suffers from medical conditions that inhibit walking and restrict body motion range and movement.

13. Defendant Manhattan Place Parking, LLC owns the retail property located within the condominium known as Manhattan Place Condominium, located at 630 First Avenue in New York County, New York (hereinafter referred to as "Manhattan Place Retail").

14. At all relevant times, defendant Imaa Cafe Corp. operates a Yemeni coffee house doing business as Qahwah Valley.

15. At all relevant times, defendant Imaa Cafe Corp. operates and/or leases retail space within the Manhattan Place Retail from defendant Manhattan Place Parking, LLC in which the Yemeni coffee house doing business as Qahwah Valley is located (hereinafter referred to as the "Qahwah Valley premises").

16. At all relevant times, defendant Board of Managers operates, manages, maintains, repairs, and controls the Common Retail Pathways.

17. The Common Retail Pathways are common areas of the Manhattan Place Condominium that are open and made available to patrons of the Qahwah Valley premises and are an integral facility and means of access to the Qahwah Valley premises.

18. The Common Retail Pathways consist of multiple exterior routes with one or more steps leading from the public sidewalk to the Qahwah Valley premises (the "Stepped Retail Pathways"); and one ramped exterior route leading from the public sidewalk to the Qahwah Valley premises (the "Ramped Retail Pathway").

19. Upon information and belief, Manhattan Place Parking, LLC and Imaa Cafe Corp. have a written lease agreement.

**ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

20. Numerous architectural barriers exist within the Qahwah Valley premises and along the Common Retail Pathways that deny Plaintiff, because of his disability, full and equal access to, and the safe, dignified, and independent use and enjoyment of, the goods, services, facilities, privileges, advantages, and accommodations offered by the Common Retail Pathways and at the Qahwah Valley premises.

21. Upon information and belief, at some time after January 1992, alterations were made to 630 First Avenue, including areas adjacent and/or attached to 630 First Avenue, including in the 2023 calendar year.

22. Upon information and belief, at some time after January 1992, alterations were made to the Qahwah Valley premises, and to areas of 630 First Avenue and the Manhattan Place Retail related to the Qahwah Valley premises, including in the 2024 calendar year.

23. The services, features, elements and spaces of the Qahwah Valley premises are, however, not readily accessible to, or usable by Plaintiff as required by the 1991 ADA Standards for Accessible Design codified in 28 C.F.R. Part 36, Appendix D (hereinafter referred to as the "1991 Standards" or the "1991 ADA") or in the 2010 ADA Standards for Accessible Design codified in 36 CFR part 1191 Appendices B and D and 28 CFR part 36 subpart D (hereinafter referred to as the "2010 Standards" or the "2010 ADA").

24. The services, features, elements and spaces of the Common Retail Pathways are also not readily accessible to, or usable by Plaintiff as required by the NYSHRL, NYCHRL and the Administrative Code.

25. Because of Retail Defendants' failure to comply with the above-mentioned laws, including but not limited to the NYSHRL, NYCHRL, 1991 Standards or the 2010 Standards and the Administrative Code, Plaintiff was and has been unable to enjoy safe, equal, and complete access to the Qahwah Valley premises and to all of the areas of the Qahwah Valley premises that are open and available to the public.

26. Because of Defendants' failure to comply with the above-mentioned laws, including but not limited to the NYSHRL, NYCHRL and Administrative Code, as informed by applicable accessibility standards including the 1991 Standards and 2010 Standards, Plaintiff was and has been unable to enjoy safe and equal access to the Common Retail Pathways.

27. The Qahwah Valley premises has not been designed, constructed, or altered in compliance with the 1991 Standards, the 2010 Standards, the 1968 New York City Building Code, Administrative Code, Title 27 ("1968 BC"), including the 1968 BC Reference Standard ANSI 117.1-1986 ("1968 Ref Std"), the 2008 New York City Building Code ("2008 BC") including the 2008 BC Reference Standard ICC/ANSI 117.1-2003 ("2008 Ref Std"), the 2014 New York City Building Code ("2014 BC") including the 2014 BC Reference Standard ICC/ANSI 117.1-2009 ("2014/2022 Ref Std") and the 2022 New York City Building Code ("2022 BC") including the 2014/2022 Ref Std.

28. The Common Retail Pathways have not been designed, constructed, or altered in compliance with the 1991 Standards, the 2010 Standards, the 1968 BC, including the 1968 Ref Std, the 2008 BC, including the 2008 Ref Std, the 2014 BC, including the 2014/2022 Ref Std and the 2022 BC including the 2014/2022 Ref Std.

29. Barriers to access that Plaintiff encountered and/or which deter Plaintiff from patronizing the Qahwah Valley premises as well as architectural barriers that exist include, but are not limited to, the following:

I. An accessible route is not provided from the public sidewalk to the public entrance of the Qahwah Valley premises.
*Defendants fail to provide that at least one accessible route shall be provided within the site from public streets and sidewalks to the accessible*

*building or facility entrance they serve. See 1991 ADA § 4.1.2(1); 2010 ADA § 206.2.1; 1968 BC§ 27-292.5(b); 2008 BC § 1104.1; 2014 BC § 1104.1; and 2022 BC § 1104.1.*

II. The Ramped Retail Pathway (to the extent any of the Defendants claims it provides an accessible route) does not coincide with the general circulation path.
*Defendants do not provide an accessible route to the retail facilities from each site arrival point including public transportation stops, accessible parking, public streets or sidewalks that coincides with the general circulation path used by patrons thereby relegating plaintiff to a "second class citizen". See 1991 ADA §§ 4.3.2(1) and 4.1.2(1); 2010 ADA §§ 206.1; 206.2 and 206.3; 1968 BC § 27-292.5(b); 2008 BC §§ 1104.1 and 1104.5; 2014 BC §§ 1104.1 and 1104.5; and 2022 BC §§ 1104.1 and 1104.5.*

III. The Stepped Retail Pathways contain changes in level greater than ½ inch high.
*Defendants fail to provide that changes in level at accessible routes greater than 1/2-inch-high shall be overcome with a ramp, elevator, or platform lift. See 1991 ADA § 4.3.8; and 1968 Ref Std § 4.3.8.*
*Defendants fail to provide that changes in level at accessible routes greater than 1/2-inch-high shall be ramped. See 2010 ADA § 303.4; 2008 Ref Std § 303.3; and 2014/2022 Ref Std § 303.4.*

IV. The Stepped Retail Pathways lack handrails and/or handrail extensions on the top and/or bottom of the stairs.
*Defendants fail to provide handrails on both sides of the stairs. See 1991 ADA § 4.9.4; 2010 ADA § 505.2; 1968 Ref Std § 4.9.4; 2008 Ref. Std § 505.2; and 2014/2022 Ref. Std § 505.2.*
*Defendants fail to provide handrails at the top and bottom of stairs that extend beyond and in the same direction of stair flights. See 1991 ADA § 4.9.4(2); 2010 ADA § 505.10; 1968 Ref Std § 4.9.4(2); 2008 Ref. Std § 505.10; and 2014/2022 Ref. Std § 505.10.*

V. The Ramped Retail Pathway slopes in excess of 8.33%.
*Defendants fail to provide that ramp runs shall have a running slope not steeper than 1:12 at accessible ramps. See 1991 ADA § 4.8.2; 2010 ADA § 405.2; 1968 Ref Std § 4.8.2; 2008 Ref Std § 405.2; and 2014/2022 Ref Std § 405.2.*

VI. The Ramped Retail Pathway lacks handrails on both sides.
*Defendants fail to provide handrails on both sides of the ramp. See 1991 ADA § 4.8.5; 2010 ADA §§ 405.8 and 505.2; 1968 Ref Std § 4.8.5; 2008 Ref. Std § 505.2; and 2014/2022 Ref. Std § 505.2.*

VII. The Ramped Retail Pathway changes direction without providing a level landing at the point of the change in direction.
*Defendants fail to provide a level landing of 60 in by 60 in at the change of direction. See 1991 ADA § 4.8.4; 2010 ADA § 405.7.4; 1968 BC § 27-*

*377; 1968 Ref Std § 4.8.4; 2008 BC §§ 1010.6, 1010.6.1 and 1010.6.4; 2008 Ref. Std § 405.7.1 and 405.7.4; 2014 BC §§ 1010.6, 1010.6.1 and 1010.6.4; 2014/2022 Ref. Std §§ 405.7.1 and 405.7.4; and 2022 BC §§ 1012.6, 1012.6.1 and 1012.6.4.*

VIII. The sales and service counter at the Qahwah Valley premises is not accessible.
*Defendants fail to provide that, where provided, at least one of each type of sales counter and service counter is accessible. See 1991 ADA § 7.2; 2010 ADA § 227.3;1968 BC § 27-292.1; 2008 BC § 1109.12.3; 2014 BC § 1109.11.3; and 2022 BC § 1109.12.3.*

IX. The sales and service counter is more than 36 inches high.
*Defendants fail to provide that an accessible portion of the (sales or service) counter surface is 36 inches high maximum above the finish floor. See 1991 ADA § 7.2; 2010 ADA §§ 904.4.1 and 904.4.2; 1968 BC § 27-292.1; 2008 Ref Std §§ 904.3.1 and 904.3.2; and 2014/2022 Ref Std §§ 904.3.1 and 904.3.2.*

X. Defendants fail to provide accessible dining surfaces at the Qahwah Valley premises.
*Where dining surfaces for the consumption of food or drink are provided, at least 10 percent of the total number of seating and standing spaces, but not less than one, of each type of dining surfaces shall be accessible and be distributed throughout the facility and located on a level accessed by an accessible route. See 2022 BC § 1108.2.9.1.*
*Defendants fail to provide that at least 5% of the dining surfaces provided to customers are accessible. See 1991 ADA § 5.1; 2010 ADA § 226.1; 1968 BC § 27-292.10(a)(3); 2008 BC § 1109.11; and 2014 BC § 1109.10.*

XI. Accessible dining surfaces are not identified by the International Symbol of Accessibility (to the extent Defendants claim they provide accessible table(s)).
*Defendants fail to provide that accessible seating shall be identified by the International Symbol of Accessibility. See 2008 BC § 1110.1(9); 2014 BC § 1110.1(11); and 2022 BC § 1111.1(12).*

XII. Defendants fail to disperse accessible dining surfaces within the Qahwah Valley premises (to the extent Defendants claim they provide accessible dining surfaces).
*Defendants fail to provide that accessible dining surfaces shall be dispersed throughout the space or facility containing dining surfaces. See 1991 ADA § 5.1 and 2010 ADA § 226.2.*

XIII. The dining tables have chairs, posts or legs that obstruct knee and toe clearances required for a forward approach to the seating.
*Defendants fail to provide (due to chairs, table pedestals or table legs) a clear floor space of 30 inches by 48 inches positioned for a forward approach and the required knee and toe clearance at accessible work surfaces and/or table surfaces. See 1991 ADA § 4.32.2; 2010 ADA §*

*902.2; 1968 Ref Std § 4.30.2; 2008 Ref Std § 902.2; and 2014/2022 Ref Std § 902.2.*

XIV. There is no accessible seating at the dining counter in the Qahwah Valley premises.
*Where seating is provided at dining or drinking counters, at least one 60 inch (1524 mm) long portion of the counter shall be provided with two accessible seating spaces. Such accessible seating space shall not be located within 40 inches (1016 mm) of either end of the counter, so as to provide individuals with disabilities with the same level of service and experience as that provided to others. See 2022 BC § 1108.2.9.2.*
*Where food or drink is served at counters exceeding 34 inches in height for consumption by customers seated on stools or standing at the counter, a portion of the main counter which is 60 inches in length minimum shall be accessible or service shall be available at accessible tables within the same area. See 1991 ADA §§ 5.1 and 5.2.*
*Defendants fail to provide that where dining surfaces are provided for the consumption of food or drink, at least 5 percent of the seating spaces and standing spaces at the dining surfaces shall be accessible. See 2010 ADA §§ 226.1 and 902.*
*Defendants fail to provide that at least 5 percent of the seating and standing spaces are accessible. See 1968 BC § 27-292.10(a)(3); 2008 BC § 1109.11; and 2014 BC § 1109.10.*

XV. The dining counter at the Qahwah Valley premises exceeds 34 inches in height.
*The tops of accessible dining surfaces shall be 28 inches minimum and 34 inches maximum above the finish floor. See 1991 ADA § 4.32.4; 2010 ADA § 902.3; and 2022 BC § 902.4.*

XVI. The toilet room in the Qahwah Valley premises is not accessible.
*Defendants fail to provide accessible toilet facilities. See 1991 ADA § 4.1.3(11); 2010 ADA § 213.1; 1968 BC § 27-292.12; 2008 BC § 1109.2; 2014 BC § 1109.2; 2022 BC § 1109.2.*

XVII. The door at the toilet room has hardware that requires pinching and/or twisting of the wrist.
*Defendants fail to provide handles, pulls, latches, locks, and other operable parts that are operable with one hand and do not require tight grasping, pinching, or twisting of the wrist. See 1991 ADA § 4.13.9; 2010 ADA § 404.2.7; 1968 Ref Std § 4.13.9; 2008 Ref Std § 404.2.6; and 2014/2022 Ref Std § 404.2.6.*

XVIII. The trash receptacle in the toilet room is not accessible. The trash receptacle is operable by foot pedal and does not provide an accessible operable part that can be operated with one hand.
*Operable parts shall be operable with one hand. See 1991 ADA § 4.27.4; 2010 ADA §309.4; 1968 Ref Std § 4.25.4; 2008 Ref Std § 309.4; and 2014/2022 Ref Std § 309.4.*

XIX. The coat hook in the toilet room is not within an accessible reach range.
*Defendants fail to provide operable parts within an accessible reach range. See 1991 ADA § 4.2.6; 2010 ADA § 308.3.1, 1968 Ref Std § 4.2.6; 2008 Ref Std § 308.3.1; and 2014/2022 Ref Std § 308.3.1.*

XX. The water closet in the toilet room lacks compliant grab bars.
*Defendants fail to provide an accessible water closet with a side wall grab bar that is 42 inches long minimum, located 12 inches maximum from the rear wall and extending 54 inches minimum from the rear wall. See 1991 ADA § 4.16.4; 2010 ADA § 604.5.1; 1968 Ref Std § 4.16.4; 2008 Ref Std § 604.5.1; and 2014/2022 Ref Std § 604.5.1.*
*Defendants fail to provide an accessible water closet with a vertical side wall grab bar. See 2008 Ref Std § 604.5.1; and 2014/2022 Ref Std § 604.5.1.*
*Defendants fail to provide an accessible water closet with a rear wall grab bar that is 36 inches long minimum and extends from the centerline of the water closet 12 inches minimum on one side and 24 inches minimum on the other side. See 1991 ADA § 4.16.4; 2010 ADA § 604.5.2; 1968 Ref Std § 4.16.4; 2008 Ref Std § 604.5.2; and 2014/2022 Ref Std § 604.5.2.*

XXI. The water closet in the toilet room lacks the required clearances due to cabinetry.
*Defendants fail to provide a clearance around the accessible water closet that is 60 inches minimum measured perpendicular from the side wall and 56 inches minimum measured perpendicular from the rear wall. See 1991 ADA § 4.17.3; 2010 ADA § 604.3.1; 1968 Ref Std § 4.17.3; 2008 Ref Std §§ 604.3.1 and 604.3.2; and 2014/2022 Ref Std §§ 604.3.1 and 604.3.2.*

XXII. Maneuvering clearances for pulling open the toilet room door to exit are not provided.
*Defendants fail to provide that floor or ground surface within required maneuvering clearances at doors shall have slopes not steeper than 1:48 (2.0%) and changes in level are not permitted. 60 inches perpendicular to the door for 18 inches parallel to the door beyond the latch is required for a forward approach to the pull side of a door, or 54 inches perpendicular to the door for 24 inches parallel to the door beyond the latch is required for a latch approach to the pull side of a door. See 1991 ADA § 4.13.6; 2010 ADA § 404.2.4; 1968 Ref Std § 4.13.6; 2008 Ref Std § 404.2.3; and 2014/2022 Ref Std § 404.2.3.*

XXIII. The lavatory in the toilet room lacks a clear floor space with sufficient knee and toe clearances due to the base cabinet.
*Defendants fail to provide that accessible lavatories have a clear floor space of 30 inches by 48 inches positioned for a forward approach with knee and toe clearance. See 1991 ADA § 4.19.3; 2010 ADA § 606.2; 1968 Ref Std § 4.19.3; 2008 Ref Std § 606.2; and 2014/2022 Ref Std § 606.2.*

30. Plaintiff either personally encountered or has knowledge of such barriers to access.

31. Upon information and belief, a full inspection of the Qahwah Valley premises and the Common Retail Pathways will reveal the existence of other barriers to access.

32. To ensure Defendants properly remedy their discriminatory violations and to avoid piecemeal litigation, Plaintiff requires a full inspection of the Qahwah Valley premises and the Common Retail Pathways in order to catalogue all of the areas of non-compliance with the 1991 Standards, the 2010 Standards and the Administrative Code. Notice is therefore given that Plaintiff intends to amend the Complaint to include any violations discovered during an inspection that are not contained in this Complaint.

33. Defendants have denied Plaintiff the opportunity to participate in or benefit from services or accommodations because of disability.

34. Defendants have not satisfied their statutory obligation to ensure that their policies, practices and procedures for persons with disabilities are compliant with the laws. Nor have Defendants made or provided accommodations or modifications to persons with disabilities.

35. Plaintiff has a realistic, credible, and continuing threat of discrimination from the Defendants' non-compliance with the laws prohibiting disability discrimination. The barriers within the Qahwah Valley premises and along the Common Retail Pathways continue to exist, impede his full and equal enjoyment when he patronizes the Qahwah Valley premises and deter Plaintiff from patronizing the café as frequently or for as long as he would like.

36. The barriers along the Common Retail Pathways remained unchanged as of Plaintiff's most recent visit and will confront Plaintiff during his future visits unless the Board of Managers removes them.

37. As of Plaintiff's most recent visit the inaccessible conditions within the Qahwah Valley premises, including the inaccessible sales and service counter and restroom conditions described herein, remain unchanged and will confront Plaintiff during his future visits unless Retail Defendants remove them.

38. Plaintiff is a foodie.

39. As a foodie, Plaintiff likes to eat out at various restaurants and cafes to experience different types of food and food preparations as well as different atmospheres.

40. When Plaintiff enjoys a food establishment, Plaintiff becomes a repeat patron.

41. One such establishment is the Qahwah Valley premises.

42. Plaintiff has patronized the Qahwah Valley premises multiple times since he first discovered the Qahwah Valley premises, in the Fall of calendar year 2025, while out and about in the neighborhood.

43. Since discovering the Qahwah Valley premises Plaintiff has patronized the café multiple times, including on or about February 4, 2026, April 4, 2026, June 1, 2026 and June 24, 2026.

44. During each of his visits, including on June 24, 2026, Plaintiff traveled over the Common Retail Pathways to enter the Qahwah Valley premises.

45. The Common Retail Pathways are common elements managed, maintained, and controlled by the Board of Managers.

46. Because the Stepped Retail Pathways are inaccessible to him as a wheelchair user, Plaintiff was required to use the Ramped Retail Pathway which does not coincide with the general circulation path used by non-disabled patrons.

47. The Ramped Retail Pathway is also excessively steep, lacks handrails on both sides, and changes direction without providing a compliant level landing. Because Plaintiff uses a wheelchair, traversing the inaccessible Ramped Retail Pathway put him at risk of tipping over.

48. Plaintiff patronizes the Qahwah Valley premises because he likes the menu items served there, particularly the Honeycomb and the Toffee Frap.

49. Plaintiff patronizes the Qahwah Valley premises because he likes the atmosphere and that the café is open until 1:00 AM on Saturdays.

50. When Plaintiff is up late on a weekend night, he patronizes the Qahwah Valley premises specifically because of its late hours and convenience to his residence.

51. Plaintiff also patronizes the Qahwah Valley premises because he likes the proximity to his home, less than 10 minutes travel distance by wheelchair.

52. However, Plaintiff does not like the inaccessibility of the Qahwah Valley premises which mars his experience.

53. Plaintiff also does not like the inaccessibility of the route he must traverse to get to the Qahwah Valley premises.

54. For example, because the Stepped Retail Pathways are inaccessible to Plaintiff as a wheelchair user, Plaintiff must use the Ramped Retail Pathway to reach the Qahwah Valley premises. This forces Plaintiff to deviate from the general circulation path. Furthermore, the excessive slope and lack of a compliant level landing at the

change in direction put Plaintiff at risk of tipping over while traversing the Ramped Retail Pathway.

55. As another example, the service counter at the Qahwah Valley premises exceeds 36 inches. Consequently, each time Plaintiff attempts to pay for his purchases, he requires the assistance of another patron or an employee as he cannot reach the credit card terminal to make payment.

56. As a further example, the first time Plaintiff needed to use the restroom at the Qahwah Valley premises he realized it was inaccessible and had to go home to relieve himself. As a result of the inaccessible restroom, which continues to be inaccessible, whenever Plaintiff needs to use the restroom, he must always leave the Qahwah Valley premises and return home to relieve himself. Plaintiff is therefore forced to leave earlier than he wishes to or risk soiling himself.

57. As a result of the inaccessible conditions, Plaintiff does not patronize the Qahwah Valley premises as frequently or for as long as he would like to patronize it.

58. As a result of the inaccessible restroom, when Plaintiff does patronize the Qahwah Valley premises, he constantly is forced to leave earlier than he desires.

59. Plaintiff intends to patronize the Qahwah Valley premises for longer durations than he currently does after the premises becomes fully accessible and compliant with the 1991 Standards or the 2010 Standards, and the Administrative Code as he will no longer be forced to return home to relieve himself.

60. Plaintiff intends to patronize the Qahwah Valley premises more frequently than he currently does after the premises becomes fully accessible and compliant with the 1991 Standards or the 2010 Standards, and the Administrative Code because he likes the

drinks and desserts served there and also appreciates the extended weekend hours of operation.

61. Plaintiff continues to suffer an injury due to Retail Defendants' maintenance of architectural barriers at the Qahwah Valley premises. This is because Plaintiff desires to patronize the Qahwah Valley premises more frequently or remain at the premises for as long as he wishes, but he cannot do so when he needs to use a restroom, as Retail Defendants deny Plaintiff the opportunity to do so based on disability because they maintain architectural barriers at the Qahwah Valley premises.

62. Plaintiff continues to suffer an injury due to Retail Defendants' maintenance of architectural barriers at the Qahwah Valley premises. This is because each time he attempts to pay for his purchases at the premises, the inaccessible payment terminal prevents Plaintiff from independently completing the transaction and forces him to rely on another patron or employee.

63. As a result, Plaintiff continues to be denied the full, equal, dignified, and independent use and enjoyment of the café's goods, services, facilities, privileges, and accommodations.

64. Plaintiff continues to suffer injury from the Board of Managers' operation and maintenance of architectural barriers along the Common Retail Pathways because each time he travels to the Qahwah Valley premises, he is forced to use the separate Ramped Retail Pathway rather than the general circulation route used by nondisabled patrons and risks tipping while traversing that pathway.

65. As a result, Plaintiff continues to be denied the full, equal, dignified, and independent use and enjoyment of the Common Retail Pathways.

66. Retail Defendants discriminate against Plaintiff in violation of the ADA, the NYSHRL, the NYCHRL and the New York State Civil Rights Law § 40 *et seq* as they have created, maintain and have failed to remove architectural barriers to wheelchair access at the Qahwah Valley premises, including the inaccessible payment terminal and restroom.

67. The Board of Managers discriminates against Plaintiff in violation of the NYSHRL, the NYCHRL and the New York State Civil Rights Law § 40 *et seq* as it maintains and has failed to remove architectural barriers to wheelchair access at the Common Retail Pathways.

**FIRST CAUSE OF ACTION**
**(VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT)**

68. Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

69. Plaintiff is substantially limited in the life activity of both walking and body motion range and thus has a disability within the meaning of the ADA. As a direct and proximate result of Plaintiff's disability, Plaintiff uses a wheelchair for mobility, and also has restricted use of arms and hands.

70. Each of the Retail Defendants is a public accommodation as they own, lease, lease to, control and/or operate a place of public accommodation, the Qahwah Valley premises located within the Manhattan Place Retail, within the meaning of the ADA (42 U.S.C. § 12181 and 28 C.F.R. § 36.104).

71. The Qahwah Valley premises is a place of public accommodation within the meaning of the ADA (42 U.S.C. § 12181 and 28 C.F.R. § 36.104) as it is a facility operated by a private entity and its operations affect commerce.

72. The ADA imposes joint and several liability on both the property owner and lessee of a place of public accommodation. 28 C.F.R. § 36.201(b).

73. Under the ADA, both the property owner and lessee are liable to the Plaintiff, and neither can escape liability by transferring their obligations to the other by contract (i.e. lease agreement). 28 C.F.R. § 36.201(b).

74. Retail Defendants have and continue to subject Plaintiff to disparate treatment by denying Plaintiff full and equal opportunity to use their place of public accommodation all because Plaintiff is disabled. Retail Defendants' policies and practices have and continue to subject Plaintiff to disparate treatment and disparate impact.

75. By failing to comply with the law in effect for decades, Retail Defendants have articulated to disabled persons such as the Plaintiff that they are not welcome, objectionable, and not desired as patrons of their public accommodation.

76. The Qahwah Valley premises is not fully accessible and fails to provide an integrated and equal setting for the disabled, all in violation of 42 U.S.C. §12182(b)(1)(A) and 28 C.F.R. § 36.203.

77. Retail Defendants failed to make the alterations accessible to the maximum extent feasible in violation of 28 C.F.R. §§ 36.402 and 36.406 and 42 U.S.C. §12183(a)(2).

78. The paths of travel to the altered primary function areas were not made accessible in violation of 28 C.F.R. § 36.403.

79. Retail Defendants failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of 28 C.F.R. § 36.304. It

would be readily achievable to make Retail Defendants' place of public accommodation fully accessible.

80. By failing to remove the barriers to access where it is readily achievable to do so, Retail Defendants have discriminated against Plaintiff on the basis of disability in violation of § 302(a) and 302(b)(2)(A)(iv) of the ADA, 42 U.S.C. § 12182(a), (b)(2)(A)(iv), and 28 C.F.R. § 36.304.

81. In the alternative, Retail Defendants have violated the ADA by failing to provide Plaintiff with reasonable alternatives to barrier removal as required by 28 C.F.R. § 36.305.

82. Retail Defendants' failure to remove the barriers to access constitutes a pattern and practice of disability discrimination in violation of 42 U.S.C. § 12181 *et seq.*, and 28 C.F.R. § 36.101 *et seq.*

83. Retail Defendants have and continue to discriminate against Plaintiff in violation of the ADA by maintaining and/or creating an inaccessible public accommodation.

## SECOND CAUSE OF ACTION
## (VIOLATIONS OF THE NEW YORK STATE HUMAN RIGHTS LAW)

84. Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

85. Plaintiff suffers from various medical conditions that separately and together prevent the exercise of normal bodily functions in Plaintiff; in particular, the life activities of both walking and body motion range. Plaintiff therefore suffers from a disability within the meaning of the Executive Law § 292(21).

86. Each of the Defendants owns, leases, leases to, controls or operates a place of public accommodation, either the Qahwah Valley premises or the Common Retail Pathways, within the meaning of the NYSHRL (Executive Law § 292(9)).

87. The Qahwah Valley premises is a place of public accommodation within the meaning of the NYSHRL (Executive Law § 292(9)) as it is a place where food is sold for consumption on the premises.

88. The Common Retail Pathways are a place of public accommodation within the meaning of the NYSHRL (Executive Law § 292(9)) as it is a public area of a building or structure.

89. In 2019, the New York State legislature enacted legislation that provides effective immediately that the New York State Human Rights Law shall be "construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed". See Executive Law § 300 [effective date: August 12, 2019].

90. By amending the Executive Law § 300 to mirror the text of the New York City Local Civil Rights Restoration Act of 2005 (Local Law 85 of 2005), the New York State legislature confirmed the legislative intent to abolish parallel construction between the New York State Human Rights Law and related Federal anti-discrimination laws.

91. Defendants have and continue to subject Plaintiff to disparate treatment by denying Plaintiff equal opportunity to use their places of public accommodation all because Plaintiff is disabled.

92. Defendants discriminated against Plaintiff in violation of NYSHRL (Executive Law § 296(2)), by maintaining and/or creating inaccessible places of public accommodation. Each of the Defendants has aided and abetted others in committing disability discrimination.

93. Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of NYSHRL (Executive Law § 296(2)(c)(iii)).

94. In the alternative, Defendants have failed to provide Plaintiff with reasonable alternatives to barrier removal as required by the NYSHRL (Executive Law § 296(2)(c)(v)).

95. It would be readily achievable to make Defendants' places of public accommodation fully accessible.

96. It would not impose an undue hardship or undue burden on Defendants to make their places of public accommodation fully accessible.

97. As a direct and proximate result of Defendants' unlawful discrimination in violation of NYSHRL, Plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, embarrassment, stress, and anxiety.

98. Plaintiff experiences stress and anxiety when he must traverse the Common Retail Pathways because, unlike nondisabled patrons, he cannot use the general circulation path and is instead forced to use a separate route to access the Qahwah Valley premises.

99. Plaintiff experiences humiliation and embarrassment when he must rely on another patron or employee to complete his payment because the payment terminal is beyond his reach.

100. Plaintiff experiences stress and anxiety when he cannot use the restroom and must either leave the Qahwah Valley premises earlier than he wishes or risk soiling himself.

101. Defendants' conduct has deprived Plaintiff of the dignity and equal treatment guaranteed by the NYSHRL.

102. Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**(VIOLATIONS OF THE NEW YORK CITY HUMAN RIGHTS LAW)**

103. Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

104. Plaintiff suffers from various medical conditions that separately and together impair Plaintiff's bodily systems - in particular, the life activities of both walking and body motion range - and thus Plaintiff has a disability within the meaning of the NYCHRL (Administrative Code § 8-102).

105. Each of the Defendants is a provider of public accommodation as they own, lease, lease to, control or operate a place of public accommodation, either the Qahwah Valley premises or the Common Retail Pathways, within the meaning of the NYCHRL (Administrative Code § 8-102).

106. The Qahwah Valley premises and Common Retail Pathways are each a place of public accommodation within the meaning of the NYCHRL (Administrative

Code § 8-102) as each is where goods, services, facilities, accommodations, advantages or privileges of any kind are extended, offered, sold, or otherwise made available.

107. The Local Civil Rights Restoration Act of 2005 (the "Restoration Act"), also known as Local Law 85, clarified the scope of the Administrative Code in relation to the NYCHRL. The Restoration Act confirmed the legislative intent to abolish "parallelism" between the NYCHRL and the Federal and New York State anti-discrimination laws by stating as follows:

> The provisions of this title shall be *construed liberally* for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so construed.

Restoration Act § 7 amending Administrative Code §8-130 of the NYCHRL (emphasis added). The Restoration Act is to be construed broadly in favor of Plaintiff to the fullest extent possible. See also New York City Local Law 35 of 2016.

108. Defendants have and continue to subject Plaintiff to disparate treatment and disparate impact by directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their places of public accommodation all because of disability in violation of the NYCHRL (Administrative Code § 8-107(4)). Each of the Defendants has aided and abetted others in committing disability discrimination.

109. Defendants have and continue to commit disability discrimination in violation of the Administrative Code (inclusive of § 8-107(4)) by maintaining conditions that fail to satisfy the objective accessibility criteria set forth in the 1991 Standards and the 2010 Standards. Those criteria provide evidence that the Qahwah Valley premises

and Common Retail Pathways are not readily accessible to or independently usable by Plaintiff.

110. Defendants have and continue to commit disability discrimination in violation of the Administrative Code (inclusive of § 8-107(4)) by maintaining conditions that fail to satisfy the applicable accessibility requirements of the New York City Building Code. Those failures provide further evidence that the Qahwah Valley premises and Common Retail Pathways are not readily accessible to or independently usable by Plaintiff.

111. Defendants have discriminated, and continue to discriminate, against Plaintiff in violation of the NYCHRL (Administrative Code § 8-107(4)) by designing, creating and/or maintaining an inaccessible commercial facility/space.

112. Defendants have subjected, and continue to subject, Plaintiff to disparate treatment by directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their commercial facility/space all because of disability in violation of the NYCHRL (Administrative Code § 8-107(4)).

113. Defendants' policies and procedures inclusive of the policies of refusing to expend funds to design, create and/or maintain an accessible commercial facility/space constitute discriminatory practices in violation of NYCHRL (Administrative Code § 8-107 (4)).

114. Retail Defendants knew or should have known that the Qahwah Valley premises were open and made available to members of the public, including wheelchair users such as Plaintiff, to purchase and consume the food and beverages offered there. Through reasonable inspection, operation, and maintenance of the areas within their

ownership or control, Retail Defendants also knew or should have known that the conditions described herein, including the inaccessible payment terminal and restroom, interfered with wheelchair users' ability to independently access and fully and equally use and enjoy the café's goods, services, facilities, privileges, advantages, and accommodations.

115. The Board of Managers knew or should have known that the Common Retail Pathways were made available to members of the public, including wheelchair users such as Plaintiff, as the means of traveling from the public sidewalk to the Qahwah Valley premises. Through reasonable inspection and maintenance of the common elements under its control, the Board of Managers also knew or should have known that the conditions described herein interfered with wheelchair access to the café.

116. Plaintiff's use of a wheelchair and resulting mobility limitations are open and obvious. During each visit, Plaintiff entered the Qahwah Valley premises using his wheelchair and interacted with Retail Defendants' employees while ordering and paying for his purchases. Retail Defendants therefore knew or should have known of Plaintiff's disability and resulting need for accessible facilities.

117. Defendants' failure to provide reasonable accommodations for persons with disabilities, inclusive of Defendants' failure to remove the barriers to access identified herein, and their consequent denial of equal opportunity to Plaintiff, constitutes an ongoing continuous pattern and practice of disability discrimination in violation of NYCHRL (Administrative Code §§ 8-107(4) and 8-107(15)).

118. In violation of the NYCHRL (Administrative Code § 8-107(6)), Defendants have and continue to aid and abet, incite, compel, or coerce each other in

each of the other Defendants' attempts to and in their acts of directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their commercial facility/space and the places of public accommodation therein, all because of disability, as well as other acts in violation of the NYCHRL.

119. The Board of Managers' failure to maintain and operate an accessible route from the public sidewalk to the Qahwah Valley premises constitutes disability discrimination in violation of the Administrative Code.

120. Defendants discriminated against Plaintiff in violation of the NYCHRL (Administrative Code, § 8-107(4)) by maintaining and/or creating an inaccessible public accommodation.

121. Defendants' conduct also violates the NYCHRL, Administrative Code 8-107 (17), which states that "an unlawful discriminatory practice . . . is established . . . [when plaintiff] demonstrates that a policy or practice of a covered entity or a group of policies or practices of a covered entity results in a disparate impact to the detriment of any group protected by the provisions of this chapter."

122. Because Defendants' public accommodation is not readily accessible and usable by people with disabilities, Defendants have demonstrated a policy or practice that has a disproportionately negative impact on the disabled (including Plaintiff).

123. Defendants' conduct constitutes an ongoing and continuous violation of the NYCHRL. Unless Defendants are enjoined from further violations, Plaintiff will continue to suffer injuries for which there is no adequate remedy at law. In particular, Plaintiff will suffer irreparable harm by being denied the accommodations, advantages, facilities, or privileges of the Defendants' public accommodation.

124. As a direct and proximate result of Defendants' unlawful discrimination in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, stress, and embarrassment.

125. Plaintiff experiences stress and anxiety when he must traverse the Common Retail Pathways because, unlike nondisabled patrons, he cannot use the general circulation path and is instead forced to use a separate route to access the Qahwah Valley premises.

126. Plaintiff experiences humiliation and embarrassment when he must rely on another patron or employee to complete his payment because the payment terminal is beyond his reach.

127. Plaintiff experiences stress and anxiety when he cannot use the restroom and must either leave the Qahwah Valley premises earlier than he wishes or risk soiling himself.

128. Defendants' conduct has deprived Plaintiff of the dignity and equal treatment guaranteed by the NYCHRL.

129. Upon information and belief, Defendants' long-standing refusal to make their places of public accommodation fully accessible was deliberate, calculated, egregious, and undertaken with reckless disregard to Plaintiff's rights under the NYCHRL.

130. By failing to comply with the law in effect for decades, Defendants have articulated to disabled persons such as the Plaintiff that they are not welcome, objectionable, and not desired as patrons of their places of public accommodation.

131. Defendants engaged in discrimination with willful or wanton negligence, and/or recklessness, and/or a conscious disregard of the rights of others and/or conduct so reckless as to amount to such disregard for which Plaintiff is entitled to an award of punitive damages pursuant to NYCHRL (Administrative Code § 8-502).

132. By refusing to make their places of public accommodation accessible, Defendants have unlawfully profited from their discriminatory conduct by collecting revenue from a non-compliant space and/or pocketing the money that they should have lawfully expended to pay for a fully compliant and accessible space. Defendants' unlawful profits plus interest must be disgorged.

133. Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
## (VIOLATIONS OF THE NEW YORK STATE CIVIL RIGHTS LAW)

134. Plaintiff realleges and incorporates by reference all allegations previously set forth in this Complaint as if fully set forth herein.

135. As set forth in Plaintiff's Second Cause of Action, Plaintiff is an individual with a disability pursuant to Executive Law § 292(21).

136. As set forth in Plaintiff's Second Cause of Action, Defendants discriminated against Plaintiff because of disability in violation of the NYSHRL.

137. As set forth in Plaintiff's Second Cause of Action, Defendants continue to subject Plaintiff to discrimination because of disability in violation of the NYSHRL.

138. Defendants violated and continue to violate New York State Civil Rights Law § 40-c by subjecting Plaintiff to discrimination in violation of the NYSHRL.

139. Plaintiff, the individual subjected to discrimination by Defendants, is a "person aggrieved" pursuant to New York State Civil Rights Law § 40-d.

140. An entity that violates New York State Civil Rights Law § 40-c is liable for a penalty of not less than one hundred ($100) dollars nor more than five hundred ($500) dollars, for each and every violation of section 40-c. New York State Civil Rights Law § 40-d.

141. The penalty for each and every violation of section 40-c is recoverable by Plaintiff, as the person aggrieved.

142. Each occasion on which Plaintiff had to traverse the inaccessible Common Retail Pathways constitutes a separate violation of the NYSHRL and New York State Civil Rights Law § 40-c.

143. Each occasion on which the inaccessible payment terminal denied Plaintiff the ability to independently complete his purchase, and each occasion on which the inaccessible dining surfaces denied Plaintiff equal use of the Qahwah Valley premises and each occasion on which the inaccessible restroom denied Plaintiff equal use of the Qahwah Valley premises, constitutes a separate violation of the NYSHRL and New York State Civil Rights Law § 40-c.

144. Plaintiff is entitled to recover the monetary penalty prescribed by New York State Civil Rights Law § 40-d for each and every violation of New York State Civil Rights Law § 40-c.

145. Notice of this action has been served upon the Attorney General as required by New York State Civil Rights Law § 40-d.

## INJUNCTIVE RELIEF

146. Plaintiff will continue to experience unlawful discrimination as a result of Defendants' failure to comply with the above-mentioned laws. Therefore, injunctive relief is necessary to order Defendants to alter and modify their places of public accommodation and their operations, policies, practices, and procedures.

147. Injunctive relief is also necessary to make Defendants' facilities readily accessible to and usable by Plaintiff in accordance with the above-mentioned laws.

148. Injunctive relief is further necessary to order Retail Defendants to provide auxiliary aids or services, modification of their policies, and/or provision of alternative methods, in accordance with the ADA.

149. Injunctive relief is further necessary to order Defendants to provide auxiliary aids or services, modification of their policies, and/or provision of alternative methods, in accordance with the NYSHRL, and the NYCHRL.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendants as applicable to each Defendant, granting the following relief:

A. Enter declaratory judgment declaring that Retail Defendants have violated the ADA and its implementing regulations and declaring the rights of Plaintiff as to Retail Defendants' place of public accommodation, and Retail Defendants' policies, practices, and procedures;

B. Enter declaratory judgment declaring that Defendants have violated the NYSHRL and the NYCHRL and declaring the rights of Plaintiff as to Defendants' places of public accommodation, and Defendants' policies, practices, and procedures;

C. Issue a permanent injunction ordering Retail Defendants to close and cease all business until Retail Defendants remove all violations of the ADA, the 1991 Standards or the 2010 Standards, the NYSHRL and the NYCHRL, including but not limited to the violations set forth above;

D. Issue a permanent injunction ordering the Board of Managers to remove all violations of the NYSHRL and the NYCHRL at the Common Retail Pathways, including but not limited to the violations set forth above;

E. Retain jurisdiction over the Defendants until the Court is satisfied that the Defendants' unlawful practices, acts and omissions no longer exist and will not reoccur;

F. Award Plaintiff compensatory damages as a result of Defendants' violations of the NYSHRL and the NYCHRL;

G. Award Plaintiff punitive damages in order to punish and deter the Defendants for their violations of the NYCHRL;

H. Award Plaintiff the monetary penalties for each and every violation of the law, per defendant, pursuant to New York State Civil Rights Law §§ 40-c and 40-d;

I. Find that Plaintiff is a prevailing party and award reasonable attorney's fees, costs, and expenses pursuant to the NYSHRL and the NYCHRL;

J. Find that Plaintiff is a prevailing party and award reasonable attorney's fees, costs, and expenses pursuant to the ADA; and

K. For such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Dated: September 10, 2026

Respectfully submitted,

**HANSKI PARTNERS LLC**

By: /s/ Robert G. Hanski

Robert G. Hanski, Esq.
*Attorneys for Plaintiff*
4 International Drive, Suite 110
Rye Brook, NY 10573
Tel: (212) 248-7400
Email: rgh@disabilityrightsny.com